UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESUS HORACIO GONZALEZ,

    Petitioner,

v.

JOHN W. HAWLEY,

    Respondent.

                               /

File No. 2:95-CV-101

HON. ROBERT HOLMES BELL

## **O P I N I O N**

On March 23, 1995, Petitioner filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, seeking relief from a 1987 conviction of first degree murder. (Dkt. No. 1.) The Court denied this petition on April 26, 1996, and entered judgment in favor of Respondent. (Dkt. Nos. 29, 30.) On September 26, 2012, Petitioner filed a motion for relief from that judgment pursuant to Federal Rules of Civil Procedure 60(b)(6) and 60(d)(3). (Dkt. No. 44.)

Rule 60(b)(6) permits a court to grant relief from a final judgment for "any other reason [than those listed] that justifies relief." "[C]ourts must apply Rule 60(b)(6) relief only in 'unusual and extreme situations where principles of equity mandate relief.'" *Blue Diamond Coal Co. v. Tr. Of UMWA Combined Ben. Fund*, 249 F.3d 516, 524 (6th Cir. 2001) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). A motion under Rule 60(b)(6) must be made "within a reasonable time." Fed. R. Civ. P. 60(c). The present motion was filed more than sixteen years after this Court entered judgment. Thus, the Court

concludes that this motion was not filed within a reasonable time.  Also, the Court concludes that Petitioner has not presented the necessary "unusual and extreme situation" to merit relief.

Rule 60(d)(3) authorizes a district court to set aside a judgment for fraud on the court. "Fraud on the court refers to 'the most egregious conduct involving a corruption of the judicial process itself.'" *Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 71 (6th Cir. 2012) (quoting 11 Charles Alan Wright et al., Federal Practice & Procedure § 2870 (West 2011)).  The Sixth Circuit has held as follows:

> Fraud upon the court should . . . embrace only that species of fraud which does or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

*Demjanjuk v. Petrovsky*, 10 F.3d 338, 352-53 (6th Cir. 1993).  A party seeking to show fraud on the court must present "clear and convincing evidence" that five elements are met: (1) conduct on the part of an officer of the court; (2) that is directed to the judicial machinery itself; (3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; (4) is a positive averment or a concealment when one is under a duty to disclose; and (5) deceives the court.  *Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010).

Petitioner raises five issues.  First he alleges that the Attorney Grievance Commission failed to perform its legal duty to investigate the allegations presented in his complaint. Second, he alleges that the Commission failed to recognize that fraud was perpetrated on the state court.  Third, he alleges that the Commission failed to recognize that Petitioner had a

constitutional right not to be deprived of his liberty as a result of fabrication of evidence. Fourth, he alleges that the Commission failed to recognize that arguing multiple theories to secure the conviction of one homicide is dishonest and deceitful. Fifth, he alleges that Kent County prosecutors withheld exculpatory evidence and committed fraud.

The first four issues all relate to alleged failures of the Attorney Grievance Commission and are not grounds for relief under Rule 60. The last issue regards the conduct of Kent County Prosecutors in the underlying state action. Petitioner argues that the fraud of those prosecutors impacted the disposition of his § 2254 motion in the following ways.

First, he points to the R&R's determination that a gunshot heard by Petitioner was in fact a gunshot and was fired by the co-defendant. He argues that the prosecuting attorneys withheld a "ballistics report" that proved "indisputably" that there was only one shooter. Petitioner contends the "gunshot" he testified to hearing was actually the bar door being slammed, a conclusion he contends supports his self-defense claim and eliminates the aiding and abetting premise relied on by the prosecution. However, the report Petitioner relies upon is a report written by a private consultant on October 31, 2006, nearly twenty years after Petitioner's conviction. (*See* Dkt. No. 45, Attach. 1, PageID# 100.) Such a report is not clear and convincing evidence of fraud by the Kent County prosecutors who could not possibly have had access to this report. Moreover, one man's "expert" opinion of the events in question is not proof that the government's own ballistics reports came to the same conclusions.

The letter sent by Dr. Stephen Cohle on April 24, 2007, is equally flawed. The letter states that in Cohle's opinion all three bullets entered from the front. This is consistent with Cohle's trial testimony that it was possible that one assailant could have fired all three bullets. (Dkt. No. 45, Attach. 2, PageID# 157.) This evidence fails to show fraud on the part of the prosecuting attorneys or fabrication of evidence.

Second, Petitioner points to the R&R's reliance on the testimony of Pablo Angiano that Petitioner shot the victim and then advanced forward to shoot the victim again after the victim turned around and started running towards the bar. Again, Petitioner is relying on the 2006 report that concluded that the victim charged the shooter. As discussed, this report is not evidence of fraud. It does not establish that Angiano's testimony was perjured or that prosecutors engaged in fraud. Petitioner also argues that Angiano's testimony conflicted with the autopsy report. The autopsy report stated that "[g]unshot residue was not found surrounding any of the wounds." (Dkt. No. 45, Attach. 2, PageID# 117.) Petitioner takes this to mean that the victim must have been farther than three to four feet away from the shooter based on Dr. Cohle's testimony that gunpowder travels three to four feet from a muzzle. Angiano testified that Petitioner was about three to four feet away from the victim when he shot him, thus Petitioner concludes the testimony was fraudulent. However, an eyewitness's estimation of distance in his testimony is not fraudulent just because it is not exact. Even if the actual distance was more than four feet (to be consistent with the autopsy report), that does not mean that Angiano's testimony was fraudulent, or even if it was, that

4

the prosecuting attorneys knew it to be fraudulent.

Third, Petitioner argues that if he bent over to shoot the victim when he was on the ground, as described by the prosecution, the shot would have left gunpowder residue. Thus, he concludes the prosecution's theory of the case was fraudulent. However, the prosecution is free to argue its own theory of the case. Such a theory is not fraudulent just because it conflicts with some evidence and/or testimony. It is the responsibility of a jury to weigh the evidence and arguments and decide whether the prosecution has proved its case beyond a reasonable doubt. The jury here found that the prosecution did meet this burden. But even if the prosecution had not proved its case beyond a reasonable doubt, that does not equate with a conclusion that its theory of the case was fraudulent.

Fourth, Petitioner argues that the prosecution's use of multiple theories to secure his conviction was fraudulent. However, the cases relied upon are inapplicable. *Stumpf v. Mitchell*, 367 F.3d 594, 611 (6th Cir. 2004), regarded the use of inconsistent theories to secure convictions against *more than one defendant* in prosecutions for the same crime. Moreover, *Mitchell* was vacated by *Bradshaw v. Stumpf*, 545 U.S. 175 (2005), because Stumpf had pleaded guilty before the prosecution used the inconsistent arguments. Similarly, *Stumpf v. Houk*, 653 F.3d 426, 436-37 (6th Cir. 2011), regarded the same issue as *Mitchell*. *Houk* is also no longer good law because it has been vacated and a rehearing en banc has been granted. As discussed, the prosecution is free to argue its theory of the case. It is not fraudulent for such a theory to encompass different alternative scenarios (e.g., a first degree

5

murder scenario, a second degree murder scenario, an aiding and abetting scenario). Thus, to the extent the prosecution did present multiple theories/scenarios, that is not evidence of fraud on the court.

Fifth, Petitioner points to the R&R's reliance on a second eyewitness, Douglas VanTuinen, to solidify its conclusion that there was sufficient evidence to convict Petitioner. Petitioner argues that the R&R failed to recognize that this testimony was "proof" that the victim had already been shot and killed by the co-defendant before Petitioner pulled out his gun because the autopsy concluded that the head and neck wounds were independently fatal. This testimony was not proof that the co-defendant killed the victim. First, the testimony of one witness standing alone cannot be considered proof; it is evidence. Second, this testimony was not evidence that the co-defendant killed the victim. The victim was shot three times and two of those wounds were independently fatal. VanTuinen testified that the co-defendant shot once and then Petitioner shot three times. Thus, the testimony did not establish that the co-defendant's shot hit the victim. Moreover, even if it had established such a fact, the testimony did not establish that the co-defendant's shot hit the victim in the head or neck. The order in which the wounds are listed in the autopsy report is not a chronological order, meaning that even if the co-defendant's shot hit the victim, there is a possibility that it resulted in the non-fatal shoulder wound. In any case, Petitioner's argument does not concern fraud on the court, but rather an alleged misinterpretation of VanTuinen's testimony by the Magistrate Judge in the R&R. A Rule 60 motion is not an appropriate place

6

to object to a Magistrate Judge's interpretation of testimony on the record.

In conclusion, all of Plaintiff's arguments lack merit and are inappropriate for a motion under Rules 60(b)(6) and 60(d)(3). Consequently, this motion will be denied.

An order consistent with this opinion will be entered.


Dated: November 9, 2012                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE